Can you state your name, please? Leslie Hurst, counsel for Appellant Philip Corvello. Okay. And you'll need to watch your own time. I'll try to prompt you if I notice it, but each of you are responsible for your time. So, ready to begin? I'm ready. Thank you. Okay. Good morning. The issue for the Court today is whether Wells Fargo was obligated under the trial period plan agreement, and I'm going to call it the TPP agreement, to offer a permanent loan modification to Mr. Corvello. The facts of this case are similar to facts that courts have seen across the country in HAMP modifications. Mr. Corvello fell on hard times. He was unable to make his monthly mortgage payments, and he contacted Wells Fargo. Wells Fargo said, we think we can help you. Send us some documents so that we know your current financial situation, and we'll see what we can do. Mr. Corvello did that. Wells Fargo looked at his documents, determined that he was qualified for a permanent loan modification under the HAMP guidelines, and sent him a TPP agreement. Under that agreement, Wells Fargo asked for additional documents for Mr. Corvello, which he provided, and then Wells Fargo looked at the additional documents and verified that under his current financial situation, he was qualified for a permanent loan modification. Mr. Corvello, on his side, under the TPP agreement, met the conditions that he had to meet. Specifically, he made three monthly payments in the amounts Wells Fargo told him to make, in the time period Wells Fargo told him to make, and he satisfied other conditions that he needed to do under the TPP agreement. Why isn't the language of the TPP agreement cover letter sufficient to put your client, I guess, on notice that a permanent modification wouldn't necessarily be forthcoming? I think the language said, to return two copies of the enclosed agreement to find out if you qualify for a modification. That's correct. I mean, we agree that they needed to verify he was qualified for a permanent modification, and they did that when they sent him, when Mr. Corvello sent the additional documents. And if you look at the letter that they sent with the TPP agreement, and that is in the Exeter Records, page 417 through 420, they told him, we're going to verify you're qualified within 30 days, based on the documents that you send us. After 30 days, if you're not qualified, we're going to send you written notice you're not qualified. You only have to make one trial period plan payment. The other two you don't have to make because you're not qualified. And we're going to work with you to make sure that there's other ways we can help you keep your home. 30 days passed, they didn't send him written notification. They let him make all three trial period plan payments, and they never mentioned any other alternatives to him. So Mr. Corvello was qualified, we allege, under the TPP agreement for a permanent modification. He satisfied the other conditions as well. Wells Fargo did not send him or offer him a permanent modification. And I want to be results in a permanent modification. What happens is it's like an options contract. So the TPP agreement is executed. You go through that, and then Wells Fargo gives you, sends the permanent modification contract, which is a separate contract, and it is executed and results in a different phase. So the actual mortgage agreement, the actual note securing the mortgage, is not modified until the permanent modification agreement is executed. What is the agreement that you claim you have? The agreement we claim we have is under the TPP, the trial period plan agreement. We claim once you satisfy the conditions, and Mr. Corvello did, Wells Fargo has to send him, give him the option of entering into the permanent modification agreement, which will in turn result in a permanent modification of his mortgage and the note securing the mortgage. Now, that permanent modification, it's like an options contract. It may not take effect, probably will, but Mr. Corvello could have chosen not to enter into it. But it's his option. It's his option, correct. Correct. Now, we end up, Wells Fargo in this case didn't offer him the permanent modification. Instead, they foreclosed on his home, and Mr. Corvello has lost his home. We now have three court of appeal decisions which say what Wells Fargo did was wrong. One of those cases is the Wygod v. Wells Fargo case. That's the Seventh Circuit case. And we now have two California court of appeal cases which hold the same thing. And those two cases follow Wygod? Yes. Yes. And that case was the case that followed Wygod directly was issued two days ago, and we submitted it to the court in a Rule 28J letter on Monday. The district court in this case dismissed the action? Yes, it did. And so we have to assume that your client, the allegations are true and your client did everything that was required. That's correct. In fact, if you look at the court's order, the court even assumed he was qualified and met all the conditions, and he said even if he's qualified, even if he meets all the conditions, Wells Fargo was not obligated to offer the permanent modification. Wygod said that's wrong, and I'm not going to say too much more about Wygod. It's thoroughly briefed. But we now have the West decision, that's West v. J.P. Morgan Chase, which came out two days ago, which adopts Wygod and said that's wrong. And in fact, I'd like to quote briefly from the West case, and the court wrote, core to our decision is the court's conclusion in Wygod that when a borrower complies with all terms of a TPP and the borrower's representations remain true and correct, that's a condition, the loan servicer must offer a permanent loan modification. Now, what do you do with 2G? What do I do with 2G? I think you can easily read that so that it does not conflict with the provisions that they have to offer permanent loan modification, and that is, as I said, there's two separate contracts. So after they send the permanent modification, as they're required to do under Paragraph 1 and Section 3, all 2G says is that the permanent modification itself, the actual Those documents aren't going to be modified until the second contract is executed by the parties. But under the TPP, you have to offer, you have to offer the permanent modification if they've met the conditions. So that's how I read 2G. It can be read cohesively together without nullifying Paragraph 1 or Section 3. If I understand it, you have an argument that there's a contractual obligation on the part of the bank to offer, make the offer to your client. You also have a claim in promissory estoppel that they're estopped to deny that they had that obligation. How exactly did your client change position in reliance on what was stated in 2G? The change of position is that because he relied on that if he met the conditions, he would get the permanent modification. So he made the three payments. He quit looking around at other options, and he devoted his energies, his money, and his time to complying with the TPP agreement, when otherwise, if he'd known that Wells Fargo wasn't bound by anything, didn't have to offer it, he could have pursued other options. How about consideration? What's your best published California State case to show what you did for Wells Fargo constitutes consideration? I have a case. I'll give you the citation on reply. But in general, the consideration is he did things he would not otherwise have to do, which is give them documents. He had to agree to go to credit counseling. He had to do what else did he have to do? He had to agree to open an escrow account, and that is sufficient consideration. He did things he would not otherwise have had to do. And that's sufficient consideration, and I will provide the case citation on rebuttal. It seems like we have a lot of questions about California contract law that we have to resolve in this case. Is that right? Well, yes. It is a California contract. California law applies, and that's why I think the Court needs to look at West. And it also needs to look at the other California court of appeal decision that uses the Wygod reasoning, and that is the Barroso v. Ocwin loan servicing. We submitted that to the Court in our Rule 28J letter on December 12th, and that is a decision out of the Second District Court of Appeal, the Los Angeles Court of Appeal, and it came out in August of 2012. In the Ocwin case, again, it's a HAMP loan modification. Ms. Barroso satisfied they sent her a TPP. She satisfied all the conditions. And in this case, the lender sent her the permanent modification. Do we have any reason to think that California law differs from Illinois law or? Not on this issue, no. In fact, the Barroso case uses that same reasoning and the same contract principles that the Wygod case did. But there's other, I mean, it seems like the cases are all over the place when you look at the California on these issues. The trial court cases have been split. The California court of appeal decisions are not split. West and Barroso both say no, that is not how we read a contract in California. In Barroso, exactly like Wells Fargo did to Mr. Corbello and like they did to Ms. Wygod, they satisfied the conditions, and then the lender said, ha, ha, ha. King's X, we don't have to do anything because there's another condition precedent. In Barroso, she satisfied all the conditions under the permanent modification. She was in the permanent stage. She made monthly payments under a modified amount for nine months. She had signed the permanent agreement. She sent it back to the lender. Nine months later, Ms. Barroso learns that her house has been sold in foreclosure. She gets a notice. You've got to leave. You've got to vacate. You don't own your house. She calls the lender, and the lender says, well, guess what? We had our fingers crossed. You signed the agreement. You did everything you had to do under it, but if you look at the agreement, there's a little provision in there that even if we sign it, if we don't send you back a signed copy of the permanent modification, there's no contract. So we could sell your home, even though you did everything. And the California court of appeal, second district court of appeal, said no. That's not the way it works in California. The court said this interpretation would violate fundamental principles of contract interpretation. The principles they were talking about is you don't interpret a contract to make it harsh, unjust, and inequitable. The court further said, were we to adopt that interpretation, the lender would have sole control over formation of the contract despite Ms. Barroso's full performance simply by refusing to return a signed copy to her, exactly as a Weigott court reasoned. The court further said, we're not going to read the agreement, which was the first provision of Ms. Barroso's permanent loan modification was virtually verbatim what the TTP paragraph 1, sentence 1 was. It provides that the representations have to remain true and correct. If they are, we will provide a permanent modification or we will modify your note and the mortgage. And the court in Barroso said, we're not going to read this signature provision to nullify other expressed promises and provisions in the contract. And how about on the debt collector claim? I mean, what's your best California case to show that Wells Fargo acted as a debt collector under the Rosenthal Act scope here? If I may defer on that, Mr. Corvello actually does not have a Rosenthal Act claim. That is the Lucia case, so if I can defer. Okay. Okay. You've used up all of the time. Pardon me? I have more time? Haven't you really used up all of it? No. I could keep talking. How much time are you giving your co-counsel? Oh, I see. Yes. Thank you, Your Honor. I took up 20 seconds of her time, so I will do the rest on rebuttal. Good morning. May it please the Court. My name is Gretchen Carpenter and I represent the Lucia plaintiffs in this case. My colleague, Ms. Hurst, has addressed the three most important cases in this in the governing this case, and I'd just like to briefly respond to Judge Schroeder's comments about a question as to whether we have any reason to believe that the California law is different than Illinois law. And not only do we not have any reason to believe that they're different, but on Monday the California court of appeal in the West decision expressly adopted the Wygod case as a statement of California law. We now have the California court of appeal in a binding decision, binding on this court, saying under California law, if there's a TPP and the borrower complies and the representations remain true, the lender is obligated to offer that person a permanent modification of their loan. With respect to the binding nature of the West and the Barroso cases, Wells Fargo in its brief acknowledged that court of appeal opinions of California court of appeal opinions are binding on this court when there's no reason to believe that the California supreme court would rule differently. And here there is no such reason to believe that. What's the remedy that we're talking about here? The remedy? The remedy, yes. The breach of contract would have damages, and we've also, under some of the other claims, we've also asked for injunctive relief, which would in some cases set aside foreclosures and off and or offer permanent modifications to people who would still be entitled to them. In light of the fact that we now have the California court of appeal telling us what California law is with respect to the contract, I'd like to just briefly address our other, our remaining state law claims in this case. And I think, though, my question is correctly more directed to you on the fair debt collector claim. Yes. Thank you, Your Honor. And most of these cases have arisen in the context of Federal courts. So the claims relating specifically to HAMP have mostly been in Federal courts. So the case, most of the cases upholding Rosenthal Act claims are actually Federal cases. And a few are the Ancinelli case and the Stagicus, I'm not sure if I'm pronouncing that right, case. And then the Rays case, although that involved a forbearance agreement. I'd also submit that the West case decided on Monday supports the Rosenthal Act claim. While there's no, there was no Rosenthal Act claim in that case, the court there actually upheld a fraud claim, which is a substantially more difficult standard to meet. Whereas under the Rosenthal Act, we have the least sophisticated debtor standard applying. And what we have here is the district court saying, you don't have a Rosenthal Act claim because Wells Fargo didn't make any misrepresentations because they weren't obligated to modify your loan. And the court in West found that the plaintiff's allegations were sufficient to uphold a fraud claim, which is certainly stronger than the Rosenthal claim. So other than West, there's no other California's? State case. Your Honor, there are California state court cases on the Rosenthal Act claim. Well, but what's your best one supported under this actual scenario? I would say the Ancinelli case, but that's a Federal case. Right. So the answer is no on the California? Well, I mean, they're not with respect to the HAMP claim. Okay. I mean, with respect to a similar TPP and HAMP situation. You seek to represent a class? Yes, Your Honor. And so we're not at the class stage yet, I take it? This was before? Right, Your Honor. We were dismissed on the initial complaint without leave to amend. The West case also supports the UCL claim, which we've asserted here, as well as the promissory estoppel claim, which Ms. Hurst briefly addressed. Both the Wygod and West courts upheld promissory estoppel claims under similar circumstances, and specifically with respect to the Lucias, the facts with the West case are strikingly similar. We have a situation where they are both being told on the one hand, yes, submit your payments, and you're being considered for HAMP, and don't worry, there won't be a foreclosure. And then on the other hand, they're foreclosing. And then a couple months after they foreclose, they're sending a letter saying, what can we do to help you? So we have a very, very similar factual circumstance. And under those circumstances, the court in West upheld the promissory estoppel and the UCL claim based on unfair or deceptive practices. What – can you just help me here? On the UCL claim, what are the elements after Caltech? What are the elements for the UCL claim? Well, there are three different tests that have been applied in California courts. According to the West court, these allegations satisfy all three of those prongs, so it doesn't really matter which prong this court would apply with respect to the unfair claim. Plaintiffs also have a claim for deceptive practices, and as well as a claim for unlawful practices, which wasn't discussed in the West case, which actually was the basis of the district court's ruling here, that there was no We only have a few seconds – 30 seconds left, so we would like to reserve some time for rebuttal. Thank you. Good morning, Your Honors. May it please the Court. I'm Irene Friedel for Apelli, Wells Fargo Bank. The district court's judgment should be affirmed. This case requires application of common sense. Borrowers cannot be approved for HAMP permanent modifications unless they qualify, and we're not shooting in the dark as to what it means to qualify. HAMP has very specific guidelines that were issued by the Treasury, and servicers are not at leave to amend or provide permanent modifications to borrowers unless they qualify in accordance with those guidelines. There is no allegation in either complaint, Corvella or Lucia, that either borrower was determined qualified by Wells Fargo Bank for a permanent modification. Determined qualified? Or that Wells Fargo Bank told the borrowers that they were qualified. There is an allegation they met the requirements. Well, what they alleged was that they satisfied HAMP's initial eligibility criteria. Now, HAMP is a multi-step process. Prior to June 1st, 2010, borrowers were put on HAMP trial plans if they satisfied initial criteria. Those were they lived in their house, they were at a hardship, they met the criteria, they were below the threshold in terms of the amount of the loan that they owed. So those were initial criteria. They got a trial period plan. The policy at the time was we got to get borrowers on these trial period plans because they need relief from foreclosure activity, they need immediate payment relief. Then, once the borrowers were on trial period plans, the servicer was to determine whether they qualified. These cases fall within that time period of HAMP when borrowers needed the immediate payment relief, they needed the foreclosure stay, they got trial period plans. They can't now use the trial period plan document in isolation to get courts to order permanent modifications, which is what they're trying to do. We can't look at the trial period plan in isolation, in a vacuum, apart from the broader HAMP program. Servicers signed up for HAMP by signing the servicer's application. Kagan. Your position here is not that they didn't, in fact, qualify. Your position, as I understand it, is you never had to do anything. No, that's not. Our position is they were not found to be qualified. No, they were not found to be qualified. So you never, you never, you're the bank, never did anything, never told them they were qualified or unqualified. Well, in this case, in connection with the Lucias, they were told that they had to submit the documents with Mr. Corvello. He was, it's not in the record, he was denied because he did not qualify. But this case is not the Wygod case. In Wygod, the issue here We don't have a record that shows that. The issue here, or the issue in these cases generally, is that there has to be, there can't be a conflict between State contract law and what HAMP requires servicers to do. In the Wygod case, the court found, the Seventh Circuit found that the borrower had been determined qualified by Wells Fargo, because Wells Fargo, or it's the legacy company, Wachovia, had signed the trial period plan, and therefore the borrower could reasonably rely on that signature on the trial period plan as being found to be qualified. If there is not any signal to the borrower that they're qualified, you have a situation where State laws could provide more substantive relief to the borrowers than what's permitted under HAMP, and that's a conflict. Wygod, the Seventh Circuit resolved that conflict by saying, yes, there has to be a qualification decision. The Seventh Circuit's decision turned on the qualification of Wygod as evidenced by the signature on the trial period plan. The West decision adopted Wygod, but it completely ignored that qualification issue. Sotomayor Well, that's a question of interpretation, isn't it? I mean, you can, you can, courts are certainly You can read Wygod differently. Well, I urge the Court to look at Wygod and see that there is two material findings in Wygod that are important. One is that the borrower was qualified, determined qualified based on the signature of the TPP, and two, that compliance with HAMP is a complete defense to these claims. So you can't have a conflict between what HAMP requires and what might otherwise be provided under State law if the TPP is viewed in isolation. In these cases, borrowers are trying to get permanent modifications under HAMP purely based on the language of the TPP read in isolation, but HAMP is a balance between borrower's interests, what the servicers are required to do, what the investor requirements are, and what the Treasury is telling servicers to do. So you can't just look at the servicer's relationship with the borrower. You have to consider investor requirements and HAMP requirements. And the Treasury and the government has said borrowers can only qualify for HAMP if they satisfy both Treasury requirements and investor requirements. That is set forth in HAMP guidelines and many cases interpreting HAMP. Well, I don't see how we can say that they didn't qualify when there's no record that shows that they didn't and a complaint that shows that it alleges that they did. Well, I would respectfully say the complaints do not allege that they qualified for a permanent modification. It says that they got trial period plans. It does not say that they got a permanent modification. I'm not talking about a permanent modification. I'm talking about a complaint with a trial period. Even if what you say is true, that the complaint didn't allege it, why don't you try to figure out why the judge below didn't give them a chance to amend the complaint? Well, Judge White, at the motion to dismiss hearing, asked Plaintiffs' counsel if they were interested in moving to amend, if that's something they wanted to do. And five times on the record they said that the complaint was adequately pled. So they did not seek to amend. They did not ask to amend. They never offered to amend a complaint. So that option was provided, and they said five times on the record. It's in the transcripts that the complaint was adequately pled. And I'd like to say, going back to the issue of qualification, the Plaintiffs have made or the appellants have made arguments that if there is no decision made within 30 days or three months or whatever it is, that was not an issue in the complaint. But if a decision is not made or borrowers are treated a certain way, they should automatically default and get permanent modifications. In other words, you know, is there a suggestion that the servicer has waived the right to qualify these borrowers because it did certain actions? And our position is you can't waive the requirements of the Guidelines to qualify borrowers. A servicer can't waive those requirements. It has to qualify borrowers. The consent judgment between the United States Department of Justice ---- But wasn't all this argued in Wygott? You argued Wygott, didn't you? Yes. So, I mean, wasn't this all argued in Wygott? And I'm just trying to figure out how we distinguish Wygott at this point. What's the issue? I mean, what Wygott found, and we completely agree, is that there has to be a qualification of the borrower. The borrower has ---- and there the Seventh Circuit said Lori Wygott was reasonable ---- it was objectively reasonable for her to rely on being qualified and getting a permanent modification because Wachovia signed the TPP. That doesn't exist here. That doesn't ---- that was not a factor in this case. That's not a factor here. There is no ---- there was no signal that the Seventh Circuit found in Wygott. There was no signal here to the borrowers that they qualify. In fact, both were told that, you know, they have to qualify. They weren't told they did qualify. And you're saying that's the distinguishing factor we should zero in on. Well, that's the key. Right. And it's the core requirement in HAMP is that a borrower qualify. There are details of how the waterfall is to be applied to make sure that the servicer can find an affordable payment for the borrower. There are ---- there's the NPV test to make sure the modification satisfies the investor. Those things have to happen for the borrower to get a permanent HAMP modification. Those ---- there's no allegations here because it is not the case that these borrowers were found to be qualified. The Seventh Circuit agreed that those things had to happen, and the Seventh Circuit found that based on the signature on the TPP, they did happen. But what I wanted to point out to the Court is the default in these cases cannot be that there's a waiver of the qualification requirement under HAMP. It cannot be that these borrowers, based on an isolated reading of the TPP, get permanent modifications, and that the Department of Justice and the State Attorney General's settlement with the major servicers, including Wells Fargo, found that, in fact, borrowers that fell into this time period of HAMP that got verbal or stated trial period plans, the relief that they get under this consent judgment is that servicers must re-review them based on current financial information. This consent judgment doesn't say for these borrowers, the putative class members here, they get permanent modifications automatically. It says servicers must re-review them if requested on current financial information. Now, we, Wells Fargo here, offered that to these plaintiffs. At the motion to dismiss hearing, we said we will re-review the Lucias to see if they qualify now. And they didn't want to do that. They were not interested. They said we're entitled to a permanent modification based on what we've alleged in the complaint. So I would take to end, we cited this consent judgment in our, in our papers. But I think that that, that shows that there has to be a qualification decision and you can't, you can't order permanent modifications based on simply the language in the trial period plan. Another thing I would say in terms of the Rosenthal Act claim is that we don't believe that the activity that was engaged in by Wells Fargo constituted debt collection activity because these, these were efforts, the, the communications were instigated by the plaintiffs looking for loan modification assistance. That, under the Ninth Circuit's decision in Walker, does not constitute debt collection activity. There were not demands for payments. And therefore, we don't think the Rosenthal Act claim is viable. In terms of consideration, the plaintiffs, the Lucias in particular, alleged only that the consideration they paid was trial period payments. That, we say, is not consideration under the, under the law. Payments that were already due under the note do not constitute consideration. If the Court does not have any further questions, I would be happy to. Sotomayor, I guess, is it your position, though, that, I guess, and I'm trying to figure out if this is what happened in Wygott or what you were proposing separately, is it reasonable to then just not have the bank respond at all? Is that what you're advocating? I mean, so isn't that what occurred in one of these cases? I don't remember if it was the Corvellos or the Lucias. Well, in the Corvello case, there was a denial letter. It's not attached to the complaint, so it's not on the record. There was a decision that he was not eligible for HAMP or not qualified for HAMP. In the Lucias case, it's alleged in the complaint that they were told they had not submitted the documents that they needed to submit, and therefore, the application wasn't complete, and then the foreclosure occurred. But you agree, then, you would have to respond as a bank in some way. Yeah. Wells Fargo is bound by the guidelines. So, to me, in that respect, we definitely disagree with the Wells, with the Wygott decision that Paragraph 2G provides the servicer with unfettered discretion. Any servicer that participates in HAMP is bound to follow the HAMP guidelines, and it's bound as a result of its signing the servicer participation agreement with Treasury. It cannot simply decide, you know, it's going to comply or not comply with the guidelines, or respond or not respond to HAMP applications. It absolutely has to. There's no question, and it has to provide permanent modifications to borrowers that are qualified. And what do you say about West? It's absolutely wrong. And I, with great respect, I say it's out, it's beyond all of the different case law that's been issued on HAMP that goes one side, one way or the other. West is far beyond existing body of case law, because it's basically, it says you look at the TPP, you look only at what the borrower's conditions were, sending in payments and sending in documents, and based on that, the servicer must permanently modify the loan. It misread Supplemental Directive 0901. It ignores the waterfall process that needs to be undertaken. It ignores the investor requirements. It does not, that is not consistent with WIGOD. WIGOD clearly said the borrower needs to be qualified, and you, in a complete defense to the claims as compliance with HAMP guidelines, West ignores HAMP guidelines or misreads them. It didn't, it cited to SD 0901, but it misread them. And then how about the Barroso case? And Barroso is inapposite, because there the borrower did get a permanent modification, so there's no dispute as to whether they qualified under a trial period plan. It's simply a different case. I would also cite the Court to the Pennington decision out of the Fifth Circuit, which we submitted in a 28-J letter quite a while ago. Pennington is, there are basically two main court of appeals decisions in the Federal courts, the WIGOD decision and then the Pennington decision out of the Fifth Circuit. And in Pennington, the Court affirmed dismissal of claims brought on trial period plans that were similar to the claims here, and said, again, that there was no intent to be bound, sorry, the servicer had not reflected or signaled any intent to be bound to provide a permanent modification based solely on the language of the TPP. And that, again, is inconsistent here. Sotomayor, but does Sutcliffe, I think Sutcliffe say differently, doesn't that case? Yes, Sutcliffe is from the Northern District of California. It's one of many cases that are pending out there, and there the Court, like many cases, said borrowers can pursue claims on trial period plans if they made their you know, if they satisfied the conditions of the trial period plans. But I think that that only puts off the day of reckoning, because a borrower can't get a permanent modification under HAMP if they don't qualify, and eventually that decision is going to have to be made, whether it's at the motion-dismiss stage or on the merits, if the borrower wasn't qualified and can't show they were qualified. That's why I don't understand why you're trying to get, you're trying to get all these cases dismissed rather than show that they didn't qualify. And that, you know, it seems to me that if they didn't qualify, then we should if you're, if your position is they didn't qualify, it has to go back for you to show that they didn't qualify. Well, they can't allege that they qualified. I mean, if we get into a dispute about whether they satisfied HAMP guidelines, then I would say these, you know, there's clearly not a clear contract for a permanent modification. If we're going to go into discovery and then have the fact finder or jury try to apply HAMP guidelines, here the borrowers, they didn't get a signed TPP, they didn't get a permanent modification agreement. For those reasons, we would say they cannot show that they were determined qualified. And we say paragraph 2G is there because that is, you know, if the TPP is not signed, that is the method by which a servicer indicates that the borrower was determined qualified. They provide a permanent modification agreement. Those things didn't happen here. They, the borrowers did not get a permanent modification agreement. They didn't get a signed TPP. There was no communication to these borrowers that they qualified. In fact, the opposite was true. And therefore, and again, the HAMP guidelines are very clear about what needs to happen. So putting these cases off for another day to go down into massive discovery is not going to achieve anything except a lot of discovery. And we say that doesn't satisfy Iqbal and Chwamblee. They have to state a plausible claim to open the doors of discovery. That hasn't happened here because there was no determination that these borrowers were qualified. Thank you. Thank you. And I just want to, you could, we moved this from the February calendar, why? I'm sorry, my partner, who was going to argue the case, had surgery unexpectedly. But you argued the Weigott case. Yes. I was not able to do it in February, so. Oh, okay. Thank you very much for moving the argument. We greatly appreciate it. Thank you. To begin with, the case on consideration, the Court requested House v. Lala, 214, Calap, II, at 238. On the qualification issue, first of all, plaintiffs do allege they were qualified, and that is in the Excerpt of Record, page 216 through 218. Second of all, on the order, the Court specifically said, I'm not going to give leave to a man because, and this is from ER 11, page 11, quote, even if plaintiffs were able to allege that Wells Fargo determined that they qualified for permanent modification under the net present value analysis, neither would be able to allege he received an executed copy of the modification agreement. So qualification was not an issue on the order, and it's the order that's on appeal. With respect to West, I have a question. With respect to West, because you rely heavily on it, does it matter that Chase, in that case, conceded many of the questions before the panel, if I recall correctly, including whether the plaintiff gave consideration to support the notion that the TPP is a binding contract? No. I don't think it matters for the qualification issue, which we've been talking about, nor does it matter for interpretation of the contract, because what Chase conceded is that there was a binding contract. It did not concede how it was read, how it should be interpreted, and so no. The existence of a contract is conceded. Isn't that being disputed here? Yes. I don't think that those are serious disputes. I think that the core of the dispute is there's a contract. How do you interpret it? And also, I believe that Ms. Friedell misconstrued West. West did make a determination that Ms. West was approved for the TPP. So there was not a big discussion about it, but the Court did determine she was approved for the TPP, considering she was approved, considering they conceded it's a binding contract, how are we going to interpret it? And they said, we're going to interpret it like WIGOD does. Okay. A final thing on the qualification issue before I give the floor over is you don't have any floor to give, so just give me your final statement. In the WIGOD case, the issue was, it wasn't waiver, it is, when does Wells Fargo communicate or, as Ms. Friedell said, signal to the borrower they're qualified? In WIGOD, the signal was they signed the TPP. Here, the signal was they did not do anything after 30 days. After 30 days, they had to tell Mr. Corvello, you're not qualified in writing. They had to quit collecting the TPP payments. They had to work with him on alternative ways to stay in his home. They did none of that. They therefore communicated to Mr. Corvello, you're qualified, go ahead. And they accepted his payments? They accepted the payments after the first one. They told him, if you're not qualified, we're keeping the first one, but we won't keep any more. They kept the other two. That's a signal to him he was qualified. Thank you very much. Thank you all for your arguments here today. The case is now submitted. We'll be in recess.
judges: Schroeder, Noonan, Murguia